UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JEFFREY L. RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-151-PPS |
| | ) | |
| FORT WAYNE POLICE OFFICER | ) | |
| MARK GERARDOT #1629F, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Jeffrey Rodriguez loves his car - a 1986 Buick Regal. It's old and not exactly a classic, but Rodriguez has put a lot of effort into restoring it. He worked with his father to rebuild the engine, got the car primed and painted until it was looking good as new, and added fancy rims to the tires and big speakers for the sound system. It was the speakers that got him into trouble. Rodriguez was cruising around Fort Wayne listening to music so loudly that Officer Mark Gerardot of the Fort Wayne Police could hear the bass from thirty feet away. Gerardot pulled Rodriguez over for violating the city's noise ordinance, and, when Rodriguez didn't have proof of insurance, had Rodriguez's car towed away. Gerardot suspected that Rodriguez might have hidden illegal drugs in the car so, after a police dog conducted a sniff test, Gerardot got a warrant to search the car. Gerardot did not find any drugs, but according to Rodriguez, he did do a number on the Buick. Rodriguez claims Gerardot trashed the car, breaking components, cracking the dashboard, denting the chrome, and much more. Rodriguez has brought this suit pursuant to 42 U.S.C. § 1983 claiming Officer Gerardot violated his Fourth Amendment rights by conducting an unnecessarily destructive search.

1

Gerardot has moved for summary judgment (DE 39) arguing Rodriguez has failed to come forward with enough evidence to create a genuine dispute over whether Gerardot damaged his car. As I will explain, I find that Rodriguez has, in fact, presented enough evidence so that a reasonable jury could find in his favor. Accordingly, Gerardot's motion is **DENIED.**

## BACKGROUND

With a few important exceptions, the facts are undisputed. On May 12, 2010, Jeffrey Rodriguez was driving his car on Bluffton Road in Fort Wayne, Indiana, when he was pulled over by Fort Wayne Police Officer Mark Gerardot (DE 39-1 at 1-2). Rodriguez's car was a 1986 Buick Regal that he had bought in 2007 (DE 47-1 at 3). Rodriguez and his father had put a lot of work into the car, including rebuilding the engine, adding a powerful stereo, and installing rims on the tires. *Id.* Gerardot initiated the traffic stop because Rodriguez had his music turned up loud in violation of Forth Wayne's noise ordinance (DE 39-1 at 2). With Rodriguez's consent, Gerardot and another officer searched the car at the scene of the traffic stop (DE 47-1 at 1). They found nothing illegal. *Id.* at 2. Gerardot then cited Rodriguez for the noise violation and for not having proof of insurance with him (DE 39-1 at 2; DE 47-1 at 2). Under Indiana law you can't legally drive without insurance, so Gerardot had Rodriguez's car towed away until Rodriguez could come up with his proof of insurance (DE 39-1 at 2).

Gerardot had the car towed to Kelly Wrecker Service so that he could conduct an inventory search. *Id.* Again, he found neither narcotics nor weapons. Still not satisfied, Gerardot then had Indiana State Trooper Brad Schultz use a police dog to do a "sniff" search around the outside of the car in the hopes of finding some contraband. *Id.* at 2-3. The dog alerted at the trunk area and at the passenger side door. *Id.* Officer Schultz repeated the search and the dog alerted again. *Id.* at 3. Gerardot then had Rodriguez's car towed to the secured

2

vehicle holding area for the City of Fort Wayne Police Department so that he could get a warrant to conduct a full search. *Id.*

The next day, May 13, 2010, Geradot applied for, and was granted, a warrant to search Rodriguez's car for "controlled substances and derivatives thereof" (DE 39-1 at 6-7). Armed with the warrant, Gerardot searched the car for the third time. This time, he did a thorough job of it, searching the undercarriage, the internal ports of the bumpers, the engine compartment, the front driver's and passenger's compartments, the trunk, and the wooden speaker box that contained Rodriguez's two large speakers. *Id.* at 4. In searching the speaker box, Gerardot unscrewed the speakers in order to remove them from the box. *Id.* Again, Gerardot did not find any narcotics. *Id.* He then had the car towed back to Kelly Wrecker Service, which is where Rodriguez picked it up. *Id.*

Gerardot claims he did not cause any damage to the car during his search. Rodriguez says otherwise. According to Rodriguez, the car was "torn up." (DE 47-1 at 3). Areas of the interior had oil and water damage; there was dirt throughout the interior; the lock on the trunk was broken, the chrome piece covering the trunk lock had been torn off; one of the doors was damaged; there was a crack in the dashboard; the underbody of the car had been damaged; the back seat had been removed and was not bolted back into place; the lining of the roof and been pulled down; a part of the dashboard housing a speaker had been cracked; a seatbelt was broken; chrome on the doors had been bent; chrome on the front headlight had been chipped; a rubber piece from the gas pedal was missing; the car's overhead light was hanging from the ceiling, and the speaker box was soaked with water. *Id.* In addition, Rodriguez discovered what he claims is a GPS tracking device underneath the dashboard of the car near the steering wheel. *Id.* at 4.

Rodriguez initially brought this suit, pursuant to 42 U.S.C. §§ 1983 and 1985, against Gerardot, Schultz, two other Forth Wayne police officers, the City of Fort Wayne, and Kelly Wrecker Service (DE 1).  He alleged that the law enforcement officers had violated his constitutional rights by obtaining a search warrant based on false information, conducting a search that was outside the scope of the warrant, and conducting an unreasonably destructive search (DE 1 ¶¶ 12-13).  He alleged Fort Wayne's constitutionally inadequate policies and practices led to these violations (DE 1 ¶ 14).  And Kelly Wrecker Service conspired with law enforcement in the violation of his rights (DE 1 ¶ 10).

Since then, Rodriguez has stipulated to the dismissal of all the defendants, save Gerardot (DE 32, 37, 50).  He has also informed the court that he is abandoning the claim that Gerardot lied to obtain the warrant (DE 48 at 7).  And he has not presented any evidence, nor made any argument that the search exceeded the scope of the warrant.  That leaves the claim that Gerardot violated the Fourth Amendment and 42 U.S.C. § 1983 by conducting an unreasonably destructive search.  Gerardot argues he is entitled to summary judgment because Rodriguez has not come forward with sufficient evidence to support the claim, and, even if he had, Geradot is protected by qualified immunity.

## DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A genuine dispute about a material facts exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In making this determination, I must construe all facts and draw

all reasonable inferences from the record in the light most favorable to the nonmoving party. *Id.* at 255.

42 U.S.C. § 1983 creates a cause of action when constitutional rights are violated by those acting under color of law. Rodriguez claims Geradot violated his Fourth Amendment rights by conducting an unreasonably destructive search of his car. Even though a search may be lawful, "excessive or unreasonable destruction of property in the course of a search may violate the Fourth Amendment." *U.S. v. Ramirez*, 523 U.S. 65, 71 (1998). A claim for property damage occasioned during the execution of a valid search warrant is evaluated pursuant to the general touchstone of reasonableness which governs Fourth Amendment analysis. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

Before identifying the parties' dispute, I am going to start with where they agree. First, there's no dispute that Officer Gerardot conducted the search of Rodriguez's car (DE 39-1 at 4). Second, there is no dispute that the car is damaged. Rodriguez provided an affidavit describing the damage, has provided photographs depicting the trouble spots, and an estimate for the costs of repairs[1] (DE 47-1 - 47-5). For his part, Gerardot doesn't claim that the nearly 30-year-old vehicle is in great shape. It isn't. Where the parties disagree, then, is over who caused the damage, and, if Gerardot caused it, whether it was reasonable.

Geradot's causation argument is straightforward: whatever happened to the car, he had nothing to do with it. He has provided an affidavit where he swears he did not cause any property damage to the vehicle during the search (DE 39-1 at 4). He has also provided the video of the traffic stop from his in-car camera and claims it shows that Rodriguez scratched the car

---

[1] Only some of the estimated repairs are related to the allegations. Rodriguez's expert estimates it will cost $1,348.34 to fix the "rear bumper filler," "trunk lock," "trunk lid," add "flex additive," and "add to clear coat" (DE 47-5). Of those, only the bumper filler, and trunk lock are clearly related to damage allegedly caused by Geradot.

5

door himself while removing a car-seat from the car (DE 49). Gerardot's expert has inspected the car, and he agrees that any and all damage was either caused by Rodriguez or just happened naturally as the car aged. (DE 39-3).

Rodriguez bases his case on his affidavit and some photographs. In his affidavit, Rodriguez testifies that the car was in "excellent condition" before the police seized it (DE 47-1 at 3). He says all of the problems described above – water damage, oil damage, broken lock, etc. – were not present when police seized the car, but were there when he got the car back from them after the search. *Id.* In addition to the affidavit, Rodriguez has provided a photograph of the car before the search and photographs of the car after the search that depict some of the alleged damage (DE 47-2; DE 47-3). Although this isn't overwhelming evidence by any means – for one thing, the "before" photograph is taken from too far away to truly serve as an effective comparator to the "after" photographs – it is sufficient to create an issue of fact. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (an affidavit from the plaintiff that sets forth specific facts, is based on personal knowledge, and is supported by facts in the record is sufficient to defeat summary judgment); *Irwin v. City of Lawrenceburg*, 693 F. Supp. 2d 846, 852 (S.D. Ind. 2010) (plaintiff's testimony and photographic evidence of damage were sufficient to create an issue of fact regarding an unreasonably destructive search). This is a close call. I think that Rodriguez is going to have a very difficult time proving Officer Geradot actually caused the alleged damage. The car is old and old cars deteriorate. But Rodriguez has put forward just enough evidence of causation to squeak past summary judgment.

Relatedly, Gerardot argues that, since Rodriguez did not personally witness Gerardot's search, his claim that Gerardot caused the damage is "pure speculation" (DE 52 at 5). While it's true that Rodriguez did not personally witness Gerardot's search, his claim that Geradot damaged

6

the car rises above the level of speculation to the level of a reasonable inference. Rodriguez claims the damage occurred between the time his car was seized and when he got it back. There is no dispute over what occurred in that interval. Gerardot had the car towed to Kelly Wrecker Service, performed an inventory search and the dog sniff search, obtained a warrant, had the car towed to the secure holding area, performed his search, and then had it towed back to Kelly's where Rodriguez picked it up (DE 39-1 at 2-8). In all that time there is no indication that anyone other than Gerardot entered the car. So if the search damaged the car, it's reasonable to infer that Gerardot caused the damage.

The Seventh Circuit's decision in *Molina ex rel. Molina v. Cooper*, 325 F.3d 963 (7th Cir. 2003) is instructive in this regard. In *Molina*, the plaintiffs alleged that a police officer damaged their car when police were executing a search warrant on plaintiffs house. *Id.* at 973. The court upheld the summary judgment ruling against the plaintiffs because the plaintiffs had no evidence that the defendant, out of the seventeen police officers on the scene, was the one officer who actually searched the truck. *Id.* In addition, there was evidence that the plaintiffs' sons had access to the truck at the time when the damage was said to have occurred. *Id.* Here, it is undisputed that Gerardot alone searched the car, and there is no evidence that anyone else had access to it. So a reasonable jury could find that, if the damage occurred, it was Gerardot who did it.

Rodriguez has to do more, of course, than just show that Gerardot damaged the car. Officers executing search warrants occasionally have to damage property in order to conduct the search. *Dalia v. U.S.*, 441 U.S. 238, 258 (1979). So the Fourth Amendment is not necessarily violated when police officers damage property during the execution of a warrant. The Fourth Amendment is only violated when the property damage is excessive or unreasonable. *Ramirez*,

523 U.S. at 71. Geradot argues that, even if he did damage the Buick, Rodriguez has not provided any evidence that the damage was excessive or unreasonable.

As I explained above, Rodriguez has presented evidence that would allow a reasonable jury to believe that Gerardot's search extensively damaged the car: that Gerardot cracked the dashboard, broke the seatbelt, stripped off pieces of the car, broke the overhead light, soaked the speaker box, broke the lock to the trunk and more (DE 47-1 at 3). While some level of property damage is inevitable, here there is just too much damage to be reasonable as a matter of law. *See Maldonado v. Pierri*, No. 08 C 1954, 2010 WL 431478, at *8 (N.D. Ill. Feb. 1, 2010) (denying summary judgment because a reasonable jury could find that a search that damaged the dashboard, side panels, carpeting, glove compartment, seatbelt, radio, and ash tray excessively and unnecessarily destroyed parts of the car). It would be one thing if the damage were necessary; if, for example, Gerardot had to cause the damage to effectuate the search. *See, e.g., Swift v. Milwaukee*, No. 07-C-857, 2009 WL 188012, at *6 (E.D. Wis. Jan. 26, 2009) (holding that a hole that officers made in wall was justified by their belief that a person might have been hiding in the crawlspace behind the wall). But Gerardot denied causing the damage and has not offered any explanation as to why it was necessary or justifiable to, for example, break the trunk lock or soak the speaker box with water. This suggests to me that there is no explanation. A reasonable jury could believe that Geradot unnecessarily destroyed parts of the car while conducting his search. That is sufficient to show that the search was unreasonable. *Brown v. City of Fort Wayne*, 752 F. Supp. 2d 925, 937-38 (N.D. Ind. 2010) (denying summary judgment when defendants could not explain why it was necessary to tear up furniture and rip an alarm system out of a wall while conducting the search); *Maldonado*, 2010 WL 431478, at *8; *Irwin*, 693 F. Supp. 2d at 852.

Finally, Gerardot argues that even if he did unnecessarily wreck Rodriguez's car, he is still entitled to qualified immunity. Police officers performing discretionary functions are entitled to qualified immunity and are shielded from civil liability for their actions unless the facts, taken in the light most favorable to the plaintiff show: (1) that the officer's conduct violated a constitutional right; and (2) that the right was clearly established at the time of the alleged violation. *See Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The unlawfulness of the act must be apparent in light of pre-existing law. *Id*. Put differently, an officer is entitled to qualified immunity if it was objectively reasonable under the specific set of circumstances for the officer to believe that his actions were lawful. *See Phelan v. Vill. of Lyons*, 531 F.3d 484, 488 (7th Cir. 2008).

The Supreme Court made it very clear in the *Ramirez* case that a violation of the Fourth Amendment occurs when excessive and unnecessary destruction of property results from a search. *Ramirez*, 253 U.S. at 71. This has been reiterated over and over again, s*ee, e.g., Molina*, 325 F.3d at 973; *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003); *Badillio v. Stopko*, 519 F. App'x 100, 107 (3d Cir. 2013); *Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000), to the point where a reasonable officer would have known that causing unnecessary damage during a search is unlawful. So there is no question that the right at issue here was clearly established, and as demonstrated above, there are genuine issues of material fact as to whether that right was violated by Gerardot. Accordingly, Gerardot is not entitled to qualified immunity. *See Maldonado*, 2010 WL 431478, at *8 ("the general principle is clearly established and a reasonable officer would have known that unnecessary property damage during a search is

unreasonable"); *Mena*, 226 F.3d at 1041 (holding an officer who destroyed property was not entitled to qualified immunity).

**Motion to Strike and Motion to Substitute Exhibit**

In addition to the motion to for summary judgment, Gerardot filed a motion to strike (DE 53). In it, he makes three arguments. First, Rodriguez's affidavit should be stricken because it is not signed. Second, parts of Rodriguez's affidavit should be stricken because they run afoul of the rules of evidence. And finally, Rodriguez's expert's affidavit should be stricken because it is irrelevant.

Motions to strike are strongly disfavored and rarely granted. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). This one is not the rare exception. As for the first argument, Rodriguez has filed a motion to substitute a signed affidavit for the unsigned one (DE 56). The signed affidavit subjects Rodriguez to penalty of perjury and comports with the requirements of 28 U.S.C. § 1746 (DE 56-1). Therefore I am going to grant Rodriguez's motion to substitute. This renders Gerardot's first argument moot.

Gerardot's second request essentially asks me to go line-by-line through Rodriguez's affidavit and strike the sentences that aren't adequately supported. If motions to strike, generally, are disfavored, motions to strike sentences or paragraphs are especially disfavored. *Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007) (stating that "motions to strike sentences or sections" are a "waste everyone's time"). I am confident I can rely on only admissible evidence in ruling on this motion for summary judgment.

And, finally, with respect to the expert's report, the report is relevant to proving the extent of damage Gerardot inflicted on the car and thus to the reasonableness of his search. As I

mentioned above, it is not the most convincing document, but that objection goes to weight rather than admissibility.  Accordingly, Gerardot's motion to strike is **DENIED**.

## CONCLUSION

Therefore, for all of the foregoing reasons, Geradot's pending Motion for Summary Judgment (DE 39) and Motion to Strike (DE 53) are **DENIED**.  Rodriguez's Motion to Substitute Exhibit (DE 56) is **GRANTED**.

In addition, the Court hereby sets a telephonic conference for **June 3, 2014,** at **9:30 a.m., Hammond/Central Time** to schedule a trial date and discuss the status of the case.

**SO ORDERED.**

ENTERED: May 5, 2014.

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT